1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  1900 Camden Avenue, Suite 101
   San Jose, California 95124
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail: service@moorelawfirm.com
              tanya@moorelawfirm.com
5
   Attorney for Plaintiff
6  Charles Quick

7

8                  **UNITED STATES DISTRICT COURT**

9                  **EASTERN DISTRICT OF CALIFORNIA**

10

11  CHARLES QUICK,                          )  No. 1:25-cv-00037-BAM
                                            )
12            Plaintiff,                     )  **FIRST AMENDED COMPLAINT**
                                            )  **ASSERTING DENIAL OF RIGHT OF**
13      vs.                                  )  **ACCESS UNDER THE AMERICANS**
                                            )  **WITH DISABILITIES ACT FOR**
14  CENTRES VILLA LIMITED                    )  **INJUNCTIVE RELIEF, DECLARATORY**
    PARTNERSHIP; SIMON-OAKLEY TOWN           )  **RELIEF, DAMAGES, ATTORNEYS'**
15  CENTER LLC; BLUE WHALE CAPITAL           )  **FEES AND COSTS (ADA)**
    LLC; CENTRES CLOVIS ALDI, LTD.;          )
16  WAL-MART REALTY COMPANY; CX              )
    SUNFLOWER, LLC;                          )
17                                           )
                                            )
18            Defendants.                    )
                                            )
19                                           )
                                            )
20                                           )
                                            )
21  _____)

22                        **I. SUMMARY**

23          1.      This is a civil rights action by plaintiff CHARLES QUICK ("Plaintiff") for

24  discrimination at the following building, structure, facility, complex, property, land,

25  development, and/or surrounding business complex: The shopping center located at the

26  northwest corner of West Shaw Avenue and Villa Avenue in Clovis, California, 93612,

27  commonly known as Sunflower Marketplace, specifically parcels APN 497-051-02; 497-051-

28  03; 497-051-18; 497-051-49; 497-051-50; and 497-051-43 (hereafter "the Facility").

2.      Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against CENTRES VILLA LIMITED PARTNERSHIP; SIMON-OAKLEY TOWN CENTER LLC; BLUE WHALE CAPITAL LLC; CENTRES CLOVIS ALDI, LTD.; WAL-MART REALTY COMPANY; and CX SUNFLOWER, LLC (hereinafter collectively referred to as "Defendants"), pursuant to Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.      JURISDICTION

3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.      Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.      Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.      VENUE

6.      All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.      PARTIES

7.      Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation. Specifically, CENTRES VILLA LIMITED PARTNERSHIP owns and operates parcel APN 497-051-43; SIMON-OAKLEY TOWN CENTER LLC owns and operates parcel APN 497-051-50; BLUE WHALE CAPITAL LLC owns and operates parcel APN 497-051-49; CENTRES CLOVIS ALDI, LTD. owns and operates parcel APN 497-051-18; WAL-MART REALTY COMPANY owns and operates parcel APN 497-051-02, on which the business known as Walmart is located, at 323 West Shaw Avenue; and CX SUNFLOWER, LLC owns and operates parcel APN 497-051-03.

//

//

//

8.      Plaintiff is substantially limited in his ability to walk, and often uses a wheelchair or mobility scooter for mobility. When not using his wheelchair or scooter, Plaintiff has difficulty walking, particularly when travelling long distances and over surfaces containing excessive slopes and/or changes in level. Plaintiff is also visually and hearing-impaired, has limited use of his hands and arms, and has bladder problems which cause him to need to use the restroom very frequently. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.      FACTS

9.      The Facility is open to the public, intended for non-residential use, and its operation affects commerce. The Facility is therefore a public accommodation as defined by applicable state and federal laws.

10.     Plaintiff lives very near the Facility and visits the Facility at least weekly. He has visited the Walmart store located at the Facility numerous times over the two years preceding the filing of this lawsuit, including on September 4, 2024, September 13, 2024, and September 19, 2024 to purchase groceries and household items, and pick up prescriptions. Plaintiff has also visited the Michael's store located at the Facility multiple times within the two years preceding this filing, which specific dates he cannot presently recall, to purchase home décor and hobby supplies. During his visits to the Facility, Plaintiff personally encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility, on account of his disabilities. Specifically, although the Facility provides a pedestrian route from the Villa Avenue public sidewalk, including curb ramps and pavement markings at some locations, the accessible route is not continuous from the public sidewalk to the store entrances, specifically Walmart and Michael's. Sections of the route consist of empty gravel and dirt lots, where there is no sidewalk. As a result, when Plaintiff drives his mobility scooter from his home, located north of the shopping center, to Walmart and Michael's via the Villa Avenue public sidewalk, when he comes to the empty lots, he has to either travel through the gravel and dirt, or on the paved vehicular

driveway to reach the sidewalk on the other side. Because Plaintiff is sight-impaired, and vehicles travel quickly down the driveway, it is not safe for him to travel with his scooter in the driveway and the only option left is to drive his scooter across the gravel lots. The surface of those sections of the route is extremely uneven and sloped, with a large vertical height change at either side where it meets the sidewalks. It is bumpy and uncomfortable for Plaintiff to drive his scooter over the uneven surfaces, and difficult to avoid tipping over or falling off the scooter.

11.     It is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access. As such, he seeks removal of the following barriers to his access that exist at the Facility of which he has personal knowledge, each of which relate to his disabilities:

a)      The pedestrian route of travel from the Villa Avenue public sidewalk to the entrances of the businesses located at the Facility, including Walmart, Sally's Beauty, Goodwill, and Michael's, within the portions of the route located on each parcel, contains excessive slopes in the direction of travel, cross slopes, vertical (or improperly beveled) changes in level exceeding 1/4 inch high, changes in level exceeding 1/2 high, and overhanging tree branches that obstruct the required 80-inch vertical clearance.

b)      The pedestrian route of travel from the Villa Avenue public sidewalk to the entrances of the businesses located at the Facility, including Walmart, Sally's Beauty, Goodwill, and Michael's, contain unstable surfaces including loose dirt and gravel, in particular (but not necessarily limited to) at the vacant lots, parcels APN 497-051-18, which is owned and operated by Defendant CENTRES CLOVIS ALDI, LTD.,  and 497-051-43, which is owned and operated by Defendant CENTRES VILLA LIMITED PARTNERSHIP. The areas of unstable surface also contain excessive slopes and changes in level.

c)      The pedestrian route of travel on parcel APN 497-051-18, which is owned and operated by Defendant CENTRES CLOVIS ALDI, LTD., is reduced to less than the required clear width at the curb ramp on said parcel.

d)    The pedestrian route of travel from the primary entry walkway near Goodwill toward the southeast portion of the shopping center (e.g. Sonic Drive-In) is not accessible. It is believed that this route is located on parcel APN 497-051-50, which is owned and operated by Defendant SIMON-OAKLEY TOWN CENTER LLC. Such route contains the following barriers:

i)    The route of travel curb ramp at the Goodwill entry walk has slopes at the top landing which exceed 1:48 (2.08%), an expansion/control joint opening that allows the passage of a ½" diameter sphere, the building column reduces the top landing to less than 48", and the bottom portion of the ramp to the drive aisle has a slope that exceeds 1:12 (8.33%).

ii)    The paint delineated route through the drive aisle has a running slope near the bottom of the curb ramp that exceeds 1:20 (5%) and a crack which creates a vertical change in level that exceeds ¼" and an opening that allows the passage of a ½" diameter sphere.

iii)    The curb ramp at the south side of the drive aisle has a change in level the exceeds ½" with vertical change in level that exceeds ¼" at the transition to the drive aisle. The ramp surface has a running slope that exceeds 1:12 (8.33%), cross slopes that exceed 1:48 (2.08%), top landing slopes that exceed 1:48 (2.08%), and a utility access cover at the top landing that creates vertical changes in level that exceed ¼" and openings that allow the passage of a ½" diameter sphere.

iv)    The walk has cross slopes that exceed 1:48 (2.08%), broken/missing/raised portions and control/expansion joint openings which create changes in level that exceed ½" with vertical changes in level that exceed ¼" and openings that allow the passage of a ½" diameter sphere, and a portion of the walk has a running slope that exceeds 1:20 (5%).

v)    The lower portion of the southernmost curb ramp has a slope that exceeds

1:12 (8.33%) and vertical change in level that exceeds ¼". The transition to the drive aisle has a change in level that exceeds ½" with vertical change in level that exceeds ¼".

    vi)    The minimum 80" vertical clearance above the route is obstructed by a tree overhanging the walk.

e)    The pedestrian route of travel from the Walmart toward the southwest portion of the shopping center, which Plaintiff is informed and believes is located on the parcel APN 497-051-02 which is owned and operated by WAL-MART REALTY COMPANY, contains the following barriers:

    i)    The route of travel curb ramp at the Walmart entry walk has a counter slope at the adjacent drive aisle that exceeds 1:20 (5%) and side flare slopes that exceed 10%.

    ii)    The curb ramp at the south side of the drive aisle has a change in level the exceeds ½" with vertical change in level that exceeds ¼" at the transition to the gutter and a counter slope at the adjacent gutter that exceeds 1:20 (5%).

    iii)    The walk has control/expansion joint openings which create vertical changes in level that exceed ¼" and openings that allow the passage of a ½" diameter sphere.

f)    The pedestrian walkway along the south and west frontage of the Walmart store, which Plaintiff is informed and believes is located on the parcel APN 497-051-02 which is owned and operated by WAL-MART REALTY COMPANY, contains portions with cross slopes that exceed 1:48 (2.08%), changes in level that exceed ½" with vertical changes in level that exceed ¼", and openings that allow the passage of a ½" diameter sphere, and the route is reduced to less than 48" and 36" in clear width at the west walk adjacent to the "stop for pedestrians" sign.

g)    The pedestrian route of travel from the north end of the west walkway to the

Walmart auto service department, which Plaintiff is informed and believes is located on the parcel APN 497-051-02 which is owned and operated by WAL-MART REALTY COMPANY, contains excessive cross slopes.

h)     The paint delineated route of travel between the northwest parking area designated accessible parking and the north customer entrance serving the Walmart auto service area, which Plaintiff is informed and believes is located on the parcel APN 497-051-02 which is owned and operated by WAL-MART REALTY COMPANY, is regularly obstructed by parked vehicles at the service bays. Additionally, there is a vertical change in level that exceeds ¼" at the transition between the concrete and asphalt portions of the route.

i)     The paint delineated route of travel between the primary designated accessible parking area and Walmart primary entrance/exit doors, which Plaintiff is informed and believes is located on the parcel APN 497-051-02 which is owned and operated by WAL-MART REALTY COMPANY, has portions with vertical changes in level that exceed ¼" and openings that allow the passage of a ½" diameter sphere at the transition between the drive aisle and the entrance walk. The route has portions with running slopes that exceed 1:20 (5%) and cross slopes that exceed 1:48 (2.08%).

j)     The route of travel between the designated accessible parking and the 311 W Shaw Avenue building has portions which do not meet the accessibility requirements. Plaintiff presently lacks sufficient information to determine which parcel this route is located on, as discovery is continuing. The route contains the following barriers:

i)     The curb ramp near the 311 W. Shaw Avenue entrance has a slope that exceeds 1:12 (8.33%), side flare slopes that exceed 10%, and a vertical change in level that exceeds ¼" at the transition to the drive aisle.

ii)    The building column reduces the ramp top landing to less than 48".

iii)   The paint delineated route of travel has portions with vertical changes in

1   level that exceed ¼" and openings that allow the passage of a ½" diameter

2   sphere.

3       iv)    The route has portions with running slopes that exceed 1:20 (5%) and

4   cross slopes that exceed 1:48 (2.08%).

5   k)    The route of travel serving the designated accessible parking west of the 255 W

6   Shaw Avenue building has portions which do not meet the accessibility

7   requirements. Plaintiff is informed and believes that this portion of the route is

8   located on parcel APN 497-051-18, which is owned and operated by Defendant

9   CENTRES CLOVIS ALDI, LTD. This route contains the following barriers:

10       i)    The curb ramp at the walk fronting the vacant lot has top landing slopes

11   that exceed 1:48 (2.08%) and ramp slopes that exceed 1:12 (8.33%).

12       ii)    The route of travel through the landscape area has a running slope that

13   exceeds 1:20 (5%) and portions with vertical changes in level that exceed

14   ¼".

15   l)    The routes of travel between the designated accessible parking serving the 255 W

16   Shaw Avenue building entrance have portions which do not meet the accessibility

17   requirements. Plaintiff is informed and believes that these routes are located on

18   parcel APN 497-051-49 which is owned and operated by Defendant BLUE

19   WHALE CAPITAL LLC. These routes contain the following barriers:

20       i)    The curb ramp near the 255 W Shaw Avenue entrance door has top

21   landing slopes that exceed 1:48 (2.08%), ramp slopes that exceed 1:12

22   (8.33%), and side flare slopes that exceed 10%.

23       ii)    The route of travel through the landscape area has vertical changes in level

24   that exceed ¼" at the transition to the drive aisle.

25       iii)    The route of travel through the drive aisle between the designated

26   accessible parking to the southeast of the 255 W Shaw Avenue building

27   entrance has a potion with cross slope that exceeds 1:48 (2.08%) and

28   cracks/missing asphalt which create openings within the ground surface

that allow the passage of a ½" diameter sphere. While there is a route of travel walk in front of this designated accessible parking, there is no route of travel between the designated accessible parking access aisle level and the walk level.

m)   The angled designated accessible parking serving the 239/255 W Shaw Avenue buildings have portions which do not meet the accessibility requirements. Plaintiff is informed and believes that these parking stalls are located on parcel APN 497-051-49 which is owned and operated by Defendant BLUE WHALE CAPITAL LLC, and parcel APN 497-051-18 which is owned and operated by Defendant CENTRES CLOVIS ALDI, LTD. These parking stalls contain the following barriers:

i)   The designated accessible parking spaces and access aisles have slopes that exceed 1:48 (2.08%); cracks, which create changes in level; and openings in the ground surface that allow the passage of a ½" diameter sphere.

ii)   The paint markings are worn/difficult to discern, the words "no parking" and hatched line within the access aisles are only partially visible, and the blue borders are not provided on all sides of the access aisles adjacent to curbs.

iii)   The easternmost and east facing standard accessible space of the group just west of the easternmost space, have parking spaces/access aisles which are not marked to be 18' minimum in length.

iv)   The parking space signs do not include the required "minimum fine $250" wording, and two (2) of the parking spaces do not have signs.

n)   The angled designated accessible parking perceived to be serving the 311 W Shaw Avenue building (Sally's Beauty) has portions which do not meet the accessibility requirements. Plaintiff presently lacks sufficient information to determine which parcel this route is located on, as discovery is continuing. This

parking stall contains the following barriers:

    i)      The designated accessible parking space and access aisle have slopes that exceed 1:48 (2.08%). The hatched paint lines within the access aisle are raised, creating ununiform surfaces, slopes and changes in level.

    ii)     There are cracks, which create ununiform surfaces, changes in level and openings in the ground surface that allow the passage of a ½" diameter sphere.

    iii)    The blue border is not provided on all sides of the access aisle.

    iv)    The access aisle is not marked to be 5' minimum in width and 18' minimum in length.

o)    The designated accessible parking serving the main entrance of the 323 W Shaw Avenue building (Walmart) has portions which do not meet the accessibility requirements. Plaintiff is informed and believes that this parking is located on the parcel APN 497-051-02 which is owned and operated by WAL-MART REALTY COMPANY. This parking contains the following barriers:

    i)      Portions of some of the designated accessible parking spaces and access aisles have slopes that exceed 1:48 (2.08%); cracks and indentations, which create ununiform surfaces, changes in level and openings in the ground surface that allow the passage of a ½" diameter sphere.

    ii)     Carts and motorized shopping carts are routinely left in and obstructing designated accessible parking spaces and access aisles.

    iii)    The signs stating, "carts to be removed and/or kept free from handicap accessible area", have the word "handicap", which is no longer an acceptable term.

p)    The lower portion of the easternmost curb ramp serving the 323 W Shaw Avenue southwest designated accessible parking area has a slope that exceeds 1:12 (8.33%). Plaintiff is informed and believes that this portion of the route is located on the parcel APN 497-051-02 which is owned and operated by WAL-MART

1    REALTY COMPANY.

2    q)    The southwest designated accessible parking serving the 323 W Shaw Avenue

3    building has portions which do not meet the accessibility requirements. Plaintiff

4    is informed and believes that this parking is located on the parcel APN 497-051-

5    02 which is owned and operated by WAL-MART REALTY COMPANY. This

6    parking contains the following barriers:

7    i)    Portions of some of the designated accessible parking spaces and access

8    aisles have slopes that exceed 1:48 (2.08%); cracks and indentations,

9    which create ununiform surfaces, changes in level and openings in the

10    ground surface that allow the passage of a ½" diameter sphere.

11    ii)    The blue border is not provided at the front portions of the access aisles.

12    iii)    The sign stating, "carts to be removed and/or kept free from handicap

13    accessible area", have the word "handicap", which is no longer an

14    acceptable term.

15    r)    The west designated accessible parking serving the auto services area of the 323

16    W Shaw Avenue building has portions which do not meet the accessibility

17    requirements. Plaintiff is informed and believes that this parking is located on the

18    parcel APN 497-051-02 which is owned and operated by WAL-MART REALTY

19    COMPANY. This parking contains the following barriers:

20    i)    There is no van accessible parking space provided within the auto services

21    parking area.

22    ii)    Portions of the designated accessible parking spaces and access aisle have

23    slopes that exceed 1:48 (2.08%).

24    iii)    The access aisle is not marked to be 60" minimum in width, measured

25    from the centerlines on the paint lines.

26    iv)    The blue border is not provided at the back portion of the access aisle.

27    s)    The Tow-Away sign at the Villa Avenue driveway is not worded as required and

28    has graffiti obscuring the information. Plaintiff presently lacks sufficient

*Quick v. Centres Villa Limited Partnership, et al.*
First Amended Complaint

1  information to determine which parcel this sign is located on, as discovery is

2  continuing.

3  t)  The following barriers are located within the Walmart customer areas, which

4  Plaintiff is informed and believes are located on the parcel APN 497-051-02

5  which is owned and operated by WAL-MART REALTY COMPANY:

6  i)  The Lawn and Garden area southwest entrance/exit door has changes in

7  level within the exterior maneuvering clearances.

8  ii)  The south Auto Service area customer exterior entrance/exit door has

9  portions which do not meet the accessibility requirements:

10  A)  The minimum 24" exterior (pull) maneuvering clearance past the

11  strike side of the door is obstructed by the guardrail.

12  B)  From an open position of 90 degrees the door closes faster than 5

13  seconds to move to a position 12 degrees from the latch.

14  C)  The floor mat, which is not secured to the floor surface, creates

15  changes in level within the maneuvering clearance at the interior

16  (push) side of the door.

17  iii)  The north Auto Service area customer exterior entrance/exit door has

18  portions which do not meet the accessibility requirements:

19  A)  The exterior (pull) maneuvering clearances have slopes that

20  exceed 1:48 (2.08%).

21  B)  There is a bin obstructing the minimum 24" maneuvering

22  clearance past the latch side of the door.

23  iv)  The Auto Service waiting and sales/service area interior customer

24  entrance/exit door has portions which do not meet the accessibility

25  requirements:

26  A)  The maneuvering clearance at the recessed door is not provided;

27  the wall projects more than 8" beyond the face of the door.

28  B)  The door requires more than 5 lbs pressure to open and from an

1       open position of 90 degrees the door closes faster than 5 seconds
2       to move to a position 12 degrees from the latch.

3      C) The bottom of the glazing panel within the door is located higher
4       than 43" above the floor.

5     v) The Customer Service area has portions which do not meet the
6      accessibility requirements:

7      A) Operable parts (touchscreen controls) of the Rug Doctor rental
8       kiosk and Sell Your Phone kiosk are located higher than the 48"
9       max reach range requirement.

10     B) The operable parts of the defibrillator cabinet and defibrillator are
11      located higher than the 48" max reach range requirement.

12    vi) The Customer Service area drinking fountain is not accessible; the
13     minimum 27" knee clearance under the low drinking fountain is not
14     provided.

15    vii) The Customer Service area north Unisex restroom has portions which do
16     not meet the accessibility requirements, although the restroom is
17     identified as accessible by signage. The restroom contains the following
18     barriers:

19     A) The door does not have the required geometric symbol sign.

20     B) The rubber floor mat creates changes in level within the
21      maneuvering clearances at the exterior (push) side of the door.

22     C) The stanchion located within the restroom obstructs the minimum
23      60" maneuvering clearance at the interior (pull) side of the door.

24     D) The door requires more than 5 lbs pressure to open and from an
25      open position of 90 degrees the door closes faster than 5 seconds
26      to move to a position 12 degrees from the latch.

27     E) The interior pull hardware is positioned higher than 44" above the
28      floor.

*Quick v. Centres Villa Limited Partnership, et al.*
First Amended Complaint

F)      The bottom edge of the reflective surface of the mirror located over the lavatory is positioned higher than 40" above the floor.

G)      The minimum 60" clearance at the toilet is not provided; the past requirement of 28" minimum between the toilet and the lavatory is also not provided.

H)      The soap dispenser is not located adjacent to an accessible route.

I)      The operable part of the paper towel dispenser is located higher than 40" above the floor.

J)      The end of the side grab bar does not extend 54" minimum from the rear wall.

K)      The end of the rear grab bar on the open side does not extend 24" minimum from the centerline of the toilet.

viii)   The Customer Service area south Unisex restroom has portions which do not meet the accessibility requirements, although the restroom is identified as accessible by signage. The restroom contains the following barriers:

A)      The door does not have the required geometric symbol sign.

B)      The rubber floor mat creates changes in level within the maneuvering clearances at the exterior (push) side of the door.

C)      The Sell Your Phone kiosk and stanchion located at the exterior side of the door obstruct the minimum 60" maneuvering clearance at the exterior (pull) side of the door. Additionally, the stanchion obstructs the door from opening to 90 degrees.

D)      The door closes faster than 5 seconds to move to a position 12 degrees from the latch.

E)      The interior pull hardware requires tight grasping and pinching and the locking hardware is positioned higher than 44" above the floor.

                    F)     The 29" minimum knee clearance is not provided under the lavatory.

                    G)     The recessed access cover creates changes in level within the clear floor space at the lavatory.

                    H)     The soap dispenser is not located adjacent to an accessible route and the operable part is positioned higher than 40" above the floor.

                    I)     The centerline of the toilet is positioned more than 18" from the side wall.

         ix)     The Men's restroom has portions which do not meet the accessibility requirements, although it is identified as accessible by signage. The restroom contains the following barriers:

                    A)     The entrance to the restroom does not have the required geometric symbol sign.

                    B)     At least one (1) of the soap dispensers is not located adjacent to an accessible route and the operable parts of the soap dispensers (not located over the children's lavatory) are positioned higher than 40" above the floor.

                    C)     The wheelchair accessible toilet compartment door is not self-closing and does not have a U-pull on both sides of the door.

                    D)     The wheelchair accessible toilet compartment is not 60" minimum in width.

                    E)     The centerline of the toilet within the wheelchair accessible compartment is positioned more than 18" from the side partition.

                    F)     The clearance below the side grab abr is less than 1-1/2".

                    G)     There are six (6) fixtures in the Men's restroom but there is no ambulatory accessible compartment.

         x)     Not all check-out aisles are accessible and the accessible check-out aisles are not identified with an ISA; several of the check-out aisles are less than

44" in clear width when serving elements on both sides, and/or are reduced to less than 36" in clear width.

xi)  The vision center sales/service counter surface is too high, and while there is a flip-up shelf attached to the front of the raised counter casework, it does not extend the full depth of the counter. In addition, the operable part of the hand sanitizer, located on top of the counter, is positioned higher than 48" above the floor.

xii)  The Health Services Room has portions which do not meet the accessibility requirements:

A)  The door requires more than 5 lbs pressure to open and from an open position of 90 degrees the door closes faster than 5 seconds to move to a position 12 degrees from the latch.

B)  The maneuvering clearance past the latch side of the door is obstructed by a chair.

C)  The minimum 60" turning space within the room is obstructed by the furniture.

xiii)  The customer use photo ordering touch screens have operable parts located higher than 48" above the floor.

xiv)  The fabric area service countertop is positioned higher than 34" above the floor.

xv)  The deli and hot food area service countertop is obstructed by a merchandise display rack.

xvi)  The customer use plastic bag dispensers within the meat and vegetable areas are positioned higher than 48" above the floor.

xvii)  The customer use "press for associate"/"need assistance" buttons throughout the store are positioned with the operable part located higher than 48" above the floor.

xviii)  The fire extinguishers throughout the facility are positioned with the

1    operable part located higher than 48" above the floor.

2       xix)    The customer use auto bulb guide is located higher than 48" above the

3               floor.

4       xx)     The customer use Auto Service waiting area drinking fountain is not

5               adjusted so that the water flow in 4" high minimum.

6       xxi)    The fitting room has portions which do not meet the accessibility

7               requirements:

8               A)      There is no clear floor space positioned at the end of the bench

9                       seat and parallel to the short axis of the bench.

10              B)      The bench is not affixed to the wall or floor.

11              C)      The coat hook is higher than 48" above the floor.

12              D)      The mirror is not mounted in a position affording a view to a

13                      person on the bench.

14      xxii)   Many of the clothing merchandise aisles are less than 44" in clear width

15              when serving elements on both sides of the aisle. Additionally, many of

16              the aisles are less than 36" in clear width, with several being reduced to

17              less than 32" in clear width. One of the merchandise aisles at the front of

18              the store is less than 44" in clear width when serving elements on both

19              sides of the aisle.

20      xxiii)  The exterior Lawn and Garden area has a crack near the door that allows

21              the passage of a ½" diameter sphere.

22      xxiv)   The southermost east Lawn and Garden exit door has a surface mounted

23              locking mechanism that obstructs the minimum 10" bottom portion of the

24              push side of the door.

25      12.     Plaintiff was, and continues to be, deterred from visiting the Facility because

26  Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

27  accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

28  Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once

*Quick v. Centres Villa Limited Partnership, et al.*
First Amended Complaint

1  the barriers are removed.

2      13.    Defendants knew, or should have known, that these elements and areas of the

3  Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

4  the physically disabled. Moreover, Defendants have the financial resources to remove these

5  barriers from the Facility (without much difficulty or expense), and make the Facility accessible

6  to the physically disabled. To date, however, Defendants refuse to either remove those barriers

7  or seek an unreasonable hardship exemption to excuse non-compliance.

8      14.    At all relevant times, Defendants have possessed and enjoyed sufficient control

9  and authority to modify the Facility to remove impediments to Plaintiff's access and to comply

10  with the 1991 ADA Accessibility Guidelines and/or the 2010 ADA Standards for Accessible

11  Design. Defendants have not removed such impediments and have not modified the Facility to

12  conform to accessibility standards. Defendants have intentionally maintained the Facility in its

13  current condition and have intentionally refrained from altering the Facility so that it complies

14  with the accessibility standards.

15      15.    Plaintiff further alleges that the (continued) presence of barriers at the Facility is

16  so obvious as to establish Defendants' discriminatory intent. On information and belief, Plaintiff

17  avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to

18  relevant building standards; disregard for the building plans and permits issued for the Facility;

19  conscientious decision to maintain the architectural layout (as it currently exists) at the Facility;

20  decision not to remove barriers from the Facility; and allowance that Defendants' property

21  continues to exist in its non-compliant state. Plaintiff further alleges, on information and belief,

22  that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are

23  not isolated or temporary interruptions in access due to maintenance or repairs.

24  ## VI.    FIRST CLAIM

25  ### Americans with Disabilities Act of 1990

26  #### Denial of "Full and Equal" Enjoyment and Use

27      16.    Plaintiff re-pleads and incorporates by reference the allegations contained in each

28  of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

17.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.    Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

19.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

20.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>. § 12182(b)(2)(A)(v).

21.    Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, that the cost of removing the architectural barriers does not exceed the benefits under the particular circumstances, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

22.    In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

23.    Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1993 – independently triggering access requirements under Title III of the ADA.

//

//

24.     The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

25.     Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

26.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1993, independently triggering access requirements under the ADA.

27.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

28.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

Failure to Maintain Accessible Features

31.    Defendants additionally violated the ADA by failing to maintain in operable working condition those features of the Facility that are required to be readily accessible to and usable by persons with disabilities.

32.    Such failure by Defendants to maintain the Facility in an accessible condition was not an isolated or temporary interruption in service or access due to maintenance or repairs.

33.    Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

34.    Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act.

## VII.    SECOND CLAIM

### Unruh Act

35.    Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

36.    California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

37.    California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

38.    California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

39.    Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

40.    These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

//

41.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of $4,000 for each offense.

42.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

43.    Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

44.    Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

45.    Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

46.    Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

47.    Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.    Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.    Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

3.    Declaratory relief finding that Defendants violated the ADA for the purposes of Unruh Act damages.

4.    Attorneys' fees, litigation expenses, and costs of suit.[2]

5.    Interest at the legal rate from the date of the filing of this action.

6.    For such other and further relief as the Court deems proper.

Dated: 8/6/2025                                    MOORE LAW FIRM, P.C.


                                                  _/s/ Tanya E. Moore_____
                                                  Tanya E. Moore
                                                  Attorney for Plaintiff
                                                  Charles Quick

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

# VERIFICATION

I, CHARLES QUICK, am the plaintiff in the above-entitled action. I have read the foregoing First Amended Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.


Dated: _____8/6/2025_____          _____/s/ Charles Quick_____
                                        Charles Quick


I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                        /s/ Tanya E. Moore_____
                                        Tanya E. Moore
                                        Attorney for Plaintiff,
                                        Charles Quick